# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **TINA CHAPMAN,**<br>          Plaintiff,<br><br>v.<br><br>**KILOLO KIJIKAZI,**<br>**Acting Commissioner**<br>**of the Social Security**<br>**Administration,**<br>          Defendant. | Case No. 4:20-cv-1349-CLM |

## MEMORANDUM OPINION

Tina Chapman seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA issued Chapman a partially favorable decision in an opinion written by an Administrative Law Judge ("ALJ") who found that Chapman became disabled on June 23, 2018.

Chapman argues: (1) that the ALJ failed to adequately explain why she was discounting the opinions of Dr. David Wilson, a consultative psychologist; (2) that the ALJ erred in evaluating the opinions of her treating physician; (3) that the ALJ failed to accord proper weight to the opinions of consultative examiner Dr. June Nichols; and (4) that substantial evidence doesn't support the finding that Chapman can perform light work.

The court agrees that the ALJ didn't adequately explain her decision to discount Dr. Wilson's opinions. So the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner for further proceedings.

## I.   STATEMENT OF THE CASE

This is the second time that Chapman has appealed the SSA's determination about her claim for benefits. In her first appeal, Chapman successfully argued that the SSA's Appeals Council erred in denying her request for review without considering a new, chronologically relevant, and material opinion from Dr. Wilson. On remand, the ALJ held a hearing and issued a new decision. That decision is the subject of this appeal.

### A.   Chapman's Disability, as told to the ALJ

Chapman was 51 on her alleged disability onset date. (R. 143). She was 55 on the day the ALJ found she became disabled. (R. 143, 513). Chapman alleged that she was disabled because of degenerative disc disease, obesity, bipolar disorder, and anxiety/depression. (R. 180–88, 199–213, 227–35). Chapman has past work as a home health aide and certified nursing assistant. (R. 512).

At the ALJ hearing, Chapman testified that she has osteoarthritis pain in her arms, hands, neck, and shoulders. (R. 548–59). And Chapman said her neck pain is worse than it was at the time of the first ALJ hearing. (R. 542). According to Chapman, Neurontin helped relieve her neck pain but her doctors took her off that medicine to see if pain management would work. (*Id.*).

Chapman says she typically must prop her legs up for 7 hours between the hours of 8:00 AM and 5:00 PM. (R. 547). Chapman also claims that her medicine often makes her feel like she must lie down for hours at a time. (*Id.*). And Chapman can only stand in one spot for 10 minutes before needing to sit down or move around. (R. 548).

Chapman has panic attacks that sometimes last 30 minutes. (R. 538). Chapman is also being treated at CED mental health center for bipolar disorder. (R. 541). Chapman's mental health problems include hearing voices, hearing knocks on the door, and seeing things. (R. 549).

Chapman lives in an apartment with her 19-year-old son. (R. 540). Chapman performs very little chores but does laundry. (R. 540–41). Sometimes Chapman has trouble doing laundry because she cannot bend over and pick the laundry up. (R. 551). And though Chapman still drives some, her driving hurts her neck. (R. 541, 551).

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |

| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |
|---|---|---|

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

### C.   Chapman's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Chapman first brought this application for benefits in August 2014, claiming that she could not work because of various ailments, including degenerative disc disease, obesity, bipolar disorder, anxiety, and depression. After the SSA denied Chapman's claim, Chapman appealed to this court and filed two new claims for disability benefits. This court remanded the claim before it to the Commissioner for consideration of Dr. Wilson's opinion. On remand, the Appeals Council directed the ALJ to consolidate Chapman's three claims and issue a new decision. The ALJ conducted a hearing in August 2020 and ultimately found that Chapman became disabled on June 23, 2018. (R. 496–514).

At Step 1, the ALJ determined that Chapman was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined that Chapman suffered from the following severe impairments: obesity, degenerative disc disease, depression, degenerative joint disease, anxiety, bipolar disorder, and panic disorder.

At Step 3, the ALJ found that none of Chapman's impairments, individually or combined, met or equaled the severity of any of the

impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Chapman's residual functional capacity.

The ALJ determined that Chapman had the residual functional capacity to perform light work with these added limitations:

- Chapman can lift 20 pounds occasionally and 10 pounds frequently.

- Chapman is limited to sitting 6 hours in an 8-hour workday and standing/walking 6 hours in an 8-hour workday.

- Chapman can never climb ladders, ropes, or scaffolds.

- Chapman can only occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl.

- Chapman can only occasionally reach overhead.

- Chapman can understand, remember, and carry out simple instructions.

- Chapman can maintain attention and concentration for 2-hour periods at a time.

- Chapman can perform jobs that don't require interaction with the general public as part of the job duties, but she can have occasional interaction with co-workers.

- Chapman can adapt to routine and infrequent workplace changes.

- Chapman can make simple work-related decisions.

At Step 4, the ALJ found that Chapman could not perform her past relevant work.

At Step 5, the ALJ determined that before June 23, 2018 Chapman could perform jobs, such as laundry worker, marker, and garment sorter,

that exist in significant numbers in the national economy and thus Chapman was not disabled under the Social Security Act. But the ALJ found that Chapman's age category changed on June 23, 2018 and starting on that date there weren't any jobs in the national economy that Chapman could perform. So the ALJ issued Chapman a partially favorable decision, finding that Chapman became disabled on June 23, 2018 and continued to be disabled through the date of the ALJ's decision.

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   LEGAL ANALYSIS

Chapman makes four arguments for why the ALJ erred. First, Chapman argues that the ALJ didn't adequately evaluate the opinions of Dr. Wilson. According to Chapman, Dr. Wilson's opinions establish that she's entitled to benefits under former Listings 12.04. and 12.06. Second, Chapman asserts that the ALJ erred in evaluating the opinion of her treating physician, Dr. Griffith. Third, Chapman contends that the ALJ wrongly rejected the opinions of Dr. June Nichols. Finally, Chapman states that substantial evidence doesn't support the ALJ's finding that she has the residual functional capacity to perform light work.

The court agrees that the ALJ failed to provide a reasonable basis for discounting Dr. Wilson's opinions. (Though the court thinks it's best for the ALJ, not the court, to re-evaluate whether Chapman meets

6

Listings 12.04 and 12.06). So the court needn't address Chapman's other arguments for reversal. Before explaining how the ALJ erred, the court will recap Dr. Wilson's opinions and the ALJ's reasons for assigning those opinions little weight.

 1. <u>Background</u>: After the ALJ issued her first decision on Chapman's application for benefits, Chapman had a consultative exam with Dr. Wilson. Chapman then submitted several materials from Dr. Wilson to the Appeals Council. (R. 485–90). In the summary section of his psychological evaluation, Dr. Wilson stated that Chapman had serious problems with her mood and panic attacks. (R. 488). He also said that Chapman's "ability to withstand the pressures of day to day occupational functioning is highly impaired." (*Id.*). And Dr. Wilson noted that Chapman "would have difficulty with both the task and interpersonal aspects of job environments and her anxiety and panic attacks would make it very difficult for [Chapman] to work." (*Id.*). Finally, Dr. Wilson determined that "[i]t is unlikely that [Chapman's] condition will improve in the next 12 months." (*Id.*).

 Dr. Wilson also filled out a mental health source statement and mental health questionnaire on behalf of Chapman. (R. 489–490). In the mental health source statement, Dr. Wilson circled 'yes' when asked if Chapman could "understand, remember or carry out very short and simple instructions." (R. 489). But he said that Chapman could not: (1) maintain attention, concentration, or pace for periods of at least 2 hours; (2) perform activities within a schedule and be punctual with customary tolerances; (3) sustain an ordinary routine without special supervision; or (4) adjust to routine and infrequent work changes. (*Id.*). Nor could Chapman interact with supervisors, interact appropriately with co-workers, maintain socially appropriate behavior, or adhere to basic standards of neatness and cleanliness. (*Id.*). In the mental health questionnaire, Dr. Wilson responded that Chapman suffered from several limitations, including (1) marked restrictions in the ability to understand, remember, or apply information; (2) marked difficulties in the ability to interact with others; (3) marked difficulties in the ability to concentrate,

persist, or maintain pace; and (4) marked limitations in the ability to adapt or manage oneself. (R. 490).

The Appeals Council denied Chapman's request for review without considering the evidence from Dr. Wilson. On appeal, this court determined that the Appeals Council erred in not considering the new evidence from Dr. Wilson because it was chronologically relevant and there was a reasonable possibility that it would change the administrative result. *See Chapman v. Soc. Sec. Admin., Comm'r*, 2019 WL 1429630, at \*4–6 (N.D. Ala. Mar. 29, 2019). The court noted that Dr. Wilson found that Chapman had marked limitations in all four areas of mental functioning, which could lead a factfinder to determine that Chapman's impairments meet Listings 12.04 or 12.06. *Id.* at \*5. And though the court recognized that there was some inconsistency between Dr. Wilson's opinions and Chapman's treatment notes, the court explained that "[t]reatment records from a single month documenting improvement and stability do not render Dr. Wilson's psychological evaluation inconsistent with those records viewed in their entirety." *Id.*

On remand, the ALJ afforded Dr. Wilson's opinions little weight, finding that Chapman's treatment records contradicted them. (R. 509–10). The ALJ noted that Chapman arrived at Dr. Wilson's appointment on time and had neat hygiene and appearance. (R. 509). The ALJ also stated that though Chapman described some social limitations, none would suggest the inability to be around others at work. (*Id.*). The ALJ then noted that Chapman "reported going to the store, having friends who visit, going to church sometimes" and that Chapman's "main complaint is crowds." (*Id.*). According to the ALJ, Chapman's providers at CED didn't note these limitations or any socially unacceptable behaviors from Chapman. (*Id.*). The ALJ also described Chapman's recent treatment notes as documenting that Chapman's doing "very well" and explaining that Chapman was having issues staying home during COVID. (*Id.*). And the ALJ pointed out that Chapman's therapist stated that she could adhere to basic standards of neatness and cleanliness. (*Id.*).

8

The ALJ also addressed this court's determination that Dr. Wilson's opinions could change the administrative result. The ALJ explained that this court's conclusion that a factfinder could reasonably determine that Dr. Wilson's opinions established that Chapman met Listings 12.04 or 12.06 acknowledges that a factfinder could reach the opposite conclusion. (R. 510). The ALJ also noted that Dr. Wilson's opinion was "only one opinion in [Chapman's] voluminous medical record" and that Dr. Wilson was hired by Chapman's attorney and only evaluated her once. (*Id.*). The ALJ then explained that though the court correctly noted that Chapman's panic attacks caused her to quit a job after only two days, the vocational expert classified that job as a semiskilled job. (*Id.*). And the jobs the ALJ found that Chapman could perform were all unskilled. (*Id.*). Finally, the ALJ stated that during appointments Chapman attended after August 2015, she reported doing okay and recently reported doing well on her current medication. (*Id.*).

2. ALJ's error: Under the regulations that apply to Chapman's claim for benefits, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Commissioner of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). While an ALJ needn't defer to the opinions of one-time examiners, like Dr. Wilson, *see McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987), the ALJ must "state with at least some measure of clarity the grounds" for assigning a particular weight to the consultative examiner's opinion, *Winschel*, 631 F.3d at 1179. So an ALJ errs when she fails to provide a reasonable basis for discounting the opinion of a consultative examiner. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1108–09 (11th Cir. 2021).

The main reason the ALJ gave Dr. Wilson's opinions little weight was that she found them to contradict Chapman's medical records from CED. In support of this finding, the ALJ pointed to Chapman's treatment records from December 2019 and April 2020 when Chapman reported that she was "doing okay" and "doing very well." (R. 1101–07). But "[m]any mental disorders—and bipolar disorder in particular—are characterized by the unpredictable fluctuation of their symptoms, and thus it is not

9

surprising that even a highly unstable patient will have good days or possibly good months." *Simon*, 7 F.4th at 1106. And "[f]or those who suffer from such disorders, a snapshot of any single moment says little about [a person's] overall condition." *Id.* So ALJs should not "rel[y] on such snapshots to discredit the remainder of a psychiatrist's findings." *See id*; *see also id.* at 1108–09 (finding that ALJ hadn't provided a reasonable basis for discounting consultative examiner's opinions).

After reviewing Chapman's treatment records from CED, the court sees no obvious inconsistency between Dr. Wilson's opinions and the CED records viewed in their entirety. In fact, Chapman's treatment records are filled with reports that she suffers from auditory and visual hallucinations, suicidal ideation, depression, anxiety, panic attacks, anger, and aggression. (R. 444, 447, 468, 473, 943–44, 957, 998–99, 1009). For example, Chapman repeatedly told her mental health providers that she had daily anger outbursts towards her teenage son who was one of the only people she saw each day. (R. 943, 957). There very well might be a valid reason to find that Dr. Wilson's opinions don't align with Chapman's treatment notes. But given that many of Chapman's medical records seem to support Dr. Wilson's opinions, the ALJ erred in discussing only isolated entries when discrediting Dr. Wilson. *See Simon*, 7 F.4th at 1106.

The ALJ also erred in not adequately explaining why she thought the social limitations Chapman described to Dr. Wilson wouldn't affect Chapman's ability to be around others at work or what social limitations/socially unacceptable behaviors Chapman reported to Dr. Wilson but not her CED providers. Consistent with what she told Dr. Wilson, Chapman told her CED providers that she had stopped visiting friends, had trouble leaving her home, and experienced panic attacks in crowded environments like her son's graduation and Walmart. (R. 943–44). So it's difficult to discern what the ALJ meant when she said, "[n]one of these are noted by any of her providers at CED. They have never noted any socially unacceptable behaviors, etc." (R. 509). Plus, the ALJ didn't explain why evidence that Chapman suffers from panic attacks around groups of people wouldn't make it difficult for her to be around others. The

10

ALJ thus didn't provide "some measure of clarity" for why she found that the social limitations noted by Dr. Wilson didn't support his opinions.

The court recognizes that the ALJ found that Chapman's reported daily activities, such as going to the store, having friends who visit, and going to church sometimes, contradicted Dr. Wilson's opinions. But Chapman qualified her participation in these daily activities when she reported them to Dr. Wilson. For example, Chapman stated that she doesn't see any of her family, has just two or three friends, and has only ***one*** friend who comes over. (R. 487). That friend often wants Chapman to run her to the store, but as Chapman earlier explained to Dr. Wilson, the crowds at Walmart have caused her to suffer from panic attacks. (*Id.*). And Chapman doesn't "drive unless I have to" because she doesn't "like leaving the house" and it's "hard to get out." (R. 486). So though Chapman goes to church "sometimes," she doesn't "go a lot." (R. 487). To use this evidence to discount Dr. Wilson, the ALJ needed to acknowledge Chapman's limiting description of these activities and provide a reasonable explanation for why completing these tasks would undermine Dr. Wilson's opinions. *See Simon*, 7 F.4th at 1108 ("Without some reasonable explanation from the ALJ as to why completing basic household chores is inconsistent with a finding of disability, this evidence was not sufficient to discredit Dr. Turner.").

The ALJ did correctly note that statements from Chapman's therapist that Chapman could adhere to basic standards of neatness and cleanliness and that Chapman had neat hygiene and appearance at her appointment with Dr. Wilson contradicted Dr. Wilson's statement that Chapman couldn't adhere to basic standards of neatness and cleanliness. (R. 509). But these facts have little to no bearing on Dr. Wilson's opinions on the issues that he thought Chapman's mood swings, panic attacks, and anxiety—which are at the heart of her disability claim—would cause. Nor does the fact that Chapman arrived on time to her appointment with Dr. Wilson, on its own, provide a reasonable basis to discount each of Dr. Wilson's opinions.

Plus, nothing in the ALJ's discussion of this court's determination that Dr. Wilson's opinion was material shows that the ALJ gave a valid reason for discounting Dr. Wilson's opinions. To be sure, as the ALJ noted, Dr. Wilson examined Chapman only one time and was hired by Chapman's attorney. But the ALJ didn't discount the opinions of the other consultative examiners because they just examined Chapman once, so she couldn't use this rationale to discount Dr. Wilson's opinions. *See Schink v. Comm'r of Soc. Sec.*, 945 F.3d 1245, 1261 (11th Cir. 2019) (ALJ's rationale for discounting medical opinions should be the same across the board unless inconsistency is explained). Indeed, "[t]he fact that [Dr. Wilson] was a one-time consultative examiner retained by the claimant rather than the Commissioner is not, standing alone, a valid basis for rejecting his medical opinion." *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 987 (11th Cir. 2013). And that the job that caused Chapman to suffer from panic attacks was semiskilled doesn't negate the court's point that there is no obvious inconsistency between Dr. Wilson's opinions and Chapman's treatment records. So the ALJ didn't articulate a valid reason to afford all of Dr. Wilson's opinions little weight.

The Commissioner says the court should still affirm the ALJ's evaluation of Dr. Wilson's opinions because they contradict exam findings from Dr. Nichols and Dr. Bentley. (Doc. 15 at 11–12). The Commissioner also notes that Dr. Bentley suggested that there was symptom exaggeration, and that Chapman did not truly have psychotic disorder. (*Id.* at 12). The problem with this argument is that the ALJ didn't discuss Dr. Nichols or Dr. Bentley's findings when evaluating Dr. Wilson's opinions. (R. 509–10). And this court cannot "affirm simply because some rationale might have supported the ALJ's conclusion." *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). In short, without more explanation from the ALJ, the court cannot say that she had an adequate reason to discount Dr. Wilson's opinions.

## IV. CONCLUSION

In sum, the ALJ failed to articulate valid reasons for discounting each of Dr. Wilson's opinions. So the court will remand this case to the Commissioner for the ALJ to reassess Dr. Wilson's opinions. Though the court doesn't reach Chapman's arguments about the other opinion evidence, the ALJ should also re-evaluate those opinions considering Chapman's medical records as a whole. In reaching this decision, the court isn't holding that the ALJ must afford Dr. Wilson's opinions a particular weight. The court is instead merely requiring the ALJ to articulate adequate reasons for the weight she assigns Dr. Wilson's opinions.

The court will enter a separate final order that **REVERSES** the ALJ's decision and **REMANDS** this case to the Commissioner for further proceedings consistent with this opinion.

**Done** on August 1, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE